## THE TOLEDO, WABASH, AND WESTERN RAILWAY COMPANY v. HAMMOND.

SPECIAL VERDICT.—If a jury merely find the facts covering all the issues being tried, in answer to interrogatories propounded by the court, this is substantially a special verdict.

COMMON CARRIER.—*Place of Delivery.—Railroad.*—Where a railroad company is employed by a person to transport his baggage for hire from A. to B., stations on said company's road, and does not deliver the goods to him at B., but carries them to C., another station on said road, and there stores them in the company's depot baggage-room, the liability of the company as a common carrier is not thereby ended; and if the goods are stolen from the company at C. and thereby lost to said owner, the company will be liable to him for the damage sustained by him by reason of the failure to deliver the goods at B.

SAME.—*Baggage.*—Articles for use as baggage at the end of a journey or during a temporary stay at a particular place, are as properly baggage as those actually used in the transit, and may include an opera glass, though the entire journey be made at night.

APPEAL from the Miami Circuit Court.

GREGORY, J.—Hammond sued the railway company as a common carrier, for a trunk and the contents thereof, shipped at Toledo, Ohio, for Peru, Indiana. There was filed with the complaint a bill of particulars of the contents of the trunk. The defendant moved to strike out certain specified items therein for the alleged reason that they were not proper articles of baggage. The court overruled the motion; and this is complained of as erroneous. It is enough to say, that there is no allegation in the complaint that the trunk and its contents were delivered to the appellant as baggage.

The next point made is, that the court improperly overruled the appellant's motion for a *venire de novo.*

The court was asked to instruct the jury to find a special verdict. The court, on its own motion, sent to the jury interrogatories, covering the entire issues in the case. The jury answered these interrogatories. It is claimed that this is not a compliance with the provisions of the code.

Sections 335 and 336 of the code are as follows: "The

The Toledo, Wabash, and Western Railway Co. *v.* Hammond.

verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury find the facts only, leaving judgment thereon to the court."

"In all actions, the jury, unless otherwise directed by the court, may, in their discretion, render a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues; and in all cases, when required by either party, shall instruct them, if they render a general verdict, to find specially upon particular questions of fact to be stated in writing. This special finding is to be recorded with the verdict."

The only substantial difference between a " special verdict" and a "special finding," under the provisions of the code, is this: the "special verdict" must cover the issues, or some one or more of them; the "special finding" may embrace only a particular question pertinent to, but not covering, any of the issues, although it may be controlling. Any finding of a jury that covers an issue is a verdict. This is in harmony with the previous rulings of this court.

In *Paine* v. *The Lake Erie and Louisville R. R. Co.*, 31 Ind. 283, the court below, of its own motion, required the jury, unconditionally, to answer certain interrogatories, which they answered without returning a general verdict. It was held by this court, that the answers could stand as a special verdict.

It is not necessary to a special verdict that it be in any particular form; all that is required is, that the facts found, covering the issue, should be stated, leaving the conclusion of law thereon to the court.

In the case at bar, the court below committed no error in overruling the appellant's motion for a *venire de novo.*

There was a conflict in the evidence as to whether the trunk was to be carried by the appellant to Peru or to Lafayette. The appellant asked the court below to instruct

the jury, that, "if the company is not liable in this case as a common carrier; that is, if the goods were not lost in transit between Toledo and Lafayette, the plaintiff cannot recover, and your verdict should be for the defendant." The court refused to give this instruction. The court had charged the jury, that "in this case the suit is against the railway company as a common carrier, and if you find that the company carried the goods safely to their destination, and, in the absence of the plaintiff, securely stored them in her depot baggage-room, then the liability of the company as a common carrier ceased, and Hammond cannot recover for the negligence of the company in keeping the baggage as warehouseman."

The jury found, as they well might, under the evidence, that the trunk was, under the contract of shipment, to be delivered to the appellee at Peru. If in violation of this contract the appellant took it to Lafayette, and there stored it in her depot baggage-room, her liability of common carrier was not thereby terminated. The court was right in refusing to give the instruction asked.

At the instance of the appellee, the court instructed the jury, that, "if the plaintiff employed the defendant as a common carrier for hire to transport his baggage from the city of Toledo, Ohio, to Peru, Indiana, the defendant was bound to deliver the baggage at Peru, Indiana, and if the defendant did not do so, but carried the baggage past Peru to Lafayette, Indiana, and the baggage was stolen from the defendant at Lafayette, whereby it was lost to the plaintiff, the defendant is liable to the plaintiff for whatever damage he may have sustained by reason of the defendant's failure to deliver the baggage at Peru, Indiana."

It is claimed that this is the counterpart of the instruction refused; that if one was refused, the other ought to have been. This latter instruction goes upon the hypothesis that it turns out in evidence that the defendant was employed as a common carrier for hire to transport the baggage to Peru. This instruction was right. It does not ignore the

evidence tending to prove that the trunk was shipped to Lafayette and not to Peru.

It is urged that the court erred in permitting the appellee to testify as to the value of the opera glass mentioned in the bill of particulars.

It is argued that the opera glass was not properly baggage, and therefore the common carrier, without knowledge of the fact that it was in the trunk, would not be liable for the loss thereof.

It is true, that it is well settled, that merchandise which one carries in a trunk without the knowledge of the carrier is not protected as baggage, and if lost without the express fault of the carrier, he is not liable. *Great Northern Railway Co.* v. *Shepherd*, 9 Eng. Law & Eq. 477; *Collins* v. *Boston and Maine R. R.*, 10 Cush. 506.

But baggage is defined to be "such articles of apparel, ornament, &c., as are in daily use by travelers, for convenience, comfort, or recreation." 1 Bouvier's Law Dic. 180.

In *Doyle* v. *Kiser*, 6 Ind. 242, the learned judge speaking for the court says, "The articles of property treated as baggage, according to the decisions of different courts, may be clothing, traveling expense-money, a few books for the amusement of reading, a watch, a lady's jewelry for dressing, &c."

It is said in Bouvier, *supra*, "From analogy to the foregoing articles, it will be obvious that the term baggage must comprehend an almost infinite number and variety of articles not enumerated here."

An opera glass is as useful to the traveler as a "few books for amusement," or more so.

That the trip from Toledo to Peru was made in the night, can make no difference. Articles for use as baggage at the end of the journey or during a temporary stay at a particular place are as properly baggage as those actually used in the transit. We think the court below committed no error in allowing the evidence to go to the jury.

It is insisted that the evidence does not support the verdict. It is admitted that there is a conflict in it, but it is claimed

that the preponderance is so strongly in favor of the appellant that the court erred in overruling the motion for a new trial. We do not think so. Hammond, the appellee, swears positively that he shipped the trunk at Toledo for Peru. He was going there himself. Unlike the baggage-master, his attention was not divided between that and a large number of other trunks. Moreover, it would be perfectly natural that Hammond should have his mind fixed on Peru, the place of his destination; but the baggage-master would only have his mind called to the place by a single statement from the shipper. The chances are two to one that Hammond was right, and the other witnesses were wrong. But be this as it may, we cannot, under the rule of law on the subject, interfere with the finding of the jury, sanctioned as it is by the action of the court in which the case was tried.

Judgment affirmed, with costs.

*W. Z. Stuart*, for appellant.

*O. Blake*, for appellee.